3-16-0454 People with State of the Law Injury might be hooked at 1% Andrew Smith, announced by Stephen Varel Mr. Varel Good afternoon Your Honors Counsel I am Steve Varel, with the Office of State of the Law Defender, 3rd District, for the Defendant Appellant, Adam Smith May it please the Court, I have raised 5 issues in this case First, that Andrew has not proven guilty beyond reasonable doubt of unlawful possession of a weapon by a felon Second, that the trial court did not substantially comply with Rule 401A admonishments before allowing Andrew to go pro se for his trial in sentencing Third, that the trial court denied my client his right to a public trial when it excluded his mother from the voir dire proceedings and his mother and father with us, by the way, today Third, the Zaire error occurred in this case, where the trial court failed to make sure that all the jurors understood all of the Zaire principles And the fifth issue that I have raised is that my client received an unauthorized extended term sentence on the lower class felony of aggravated fleeing or attempting to elude a police officer which is class 4 and it was unauthorized because he was also convicted of two class 3 felonies, forgery and unlawful possession of a weapon by a felon I'd like to go ahead and start with the 401A admonishments At the time that Andrew Smith waived counsel in this case, the judge failed to provide him any admonishments whatsoever as to the sentencing range of the offenses The judge also failed to explain the nature of the charges and failed to even name any of the charges at that time Clearly there was no compliance at all at that time Now it is true that at Andrew's first appearance in court, several months before that, some sentencing information was provided by the judge However, under the case law, that is not to be considered towards substantial compliance because it occurred months before Andrew was talking about waiving counsel and months before the waiver occurred However, even if that information were considered, Andrew still was ultimately only told that he could be sentenced up to 10 years and he ultimately received a sentence of 14 years Now under the 4th District's precedent in bars and coke, that is clearly reversible error Those two cases said emphatically that a waiver of counsel can never be valid if someone is not informed of the sentence that they actually received They're not told they could get that sentence at the time that they waived counsel Those two cases are consistent with the purpose of the rule, which is to make sure that you have a knowing voluntary waiver of counsel with the defendant formally being admonished by a judge that he could receive a sentence that he ultimately ended up getting Therefore, this court reverts all of Andrew's misconvictions due to the error in the court's 401A admonishments If there are no questions at this time as to that issue, I will go ahead and move on to our claim of error with respect to his sentence As I said, he was clearly sentenced to an extended term on a lower class of felony than the most serious one of which he was convicted Section 582 of the Uniform Code of Corrections clearly prohibits that The Supreme Court has read an exception into that even though there's no language in the statute referencing this exception They can do what they want And they did in this case And so now there is an exception where if there is a single course of conduct in which there is no substantial change in the defendant's criminal objective an extended term can be imposed on the lower class felony But that's not what we have here Here, all the offenses were committed simultaneously Assuming that the defendant is guilty of the charged offenses as we must when we're talking about a sentencing issue The defendant had the firearms at issue in his car and the counterfeit currency at issue in his car at the time that he was fleeing from police and disregarded two credit control devices which were all the elements of the offense for aggravated fleeing or attempting to elude a police officer So he's just a young man fleeing, it's all happening simultaneously There's no case, the state has not cited any case where something like that has been held to be a single course of conduct And this court should not expand the law, especially where it's not even in the statute It would make sense to interpret the law  So, sorry, I'm not sure if I explained it correctly But it has to be, if it's not a single course of conduct is when you could have the extended term So if it is a single course of conduct, you cannot have an extended term sentence So here, yes, it was happening simultaneously It was all the same course of conduct But there's no different course of conduct And there's no reason that an extended term sentence can be imposed on the lower class felon If there are no questions as to that issue, then I will proceed to our reasonable doubt issue The reasonable doubt issue was to the offense of unlawful possession of a weapon by a felon specifically, not the other two offenses And I've argued two alternative arguments with respect to that One, that there was insufficient evidence that Andrew knew the shotguns were in the car And second, that there was insufficient evidence that he intended to exercise control over the guns inside the car As far as the... They were, where I'm from, was in a carrier for a lawn chair And another one in a duffel bag or something They were completely concealed at the time they were tossed They were found out in the ditch or wherever they were at, right? That's essentially correct, yes An officer viewed it before it was tossed out of the car at one point and did not see any gun And when they were on the ground, when they were ultimately found in the path that they had driven away At the time when police did not see them, the guns were apparently tossed out of the car And they were found in bags The handles were partially sticking out when they were on the ground We don't know what condition they were in when they were inside the car, though But we do know that an officer who initially performed a traffic stop, in this case Did have an opportunity to view inside the car and see some beer cans and other items inside the car And did not see any guns, which is clearly something that you'd expect the officer to attempt to identify Because that could potentially be a threat when you're stopping someone So, yes And it was the brother's testimony that he... They were his, or they were in his possession That he had obtained them in Pennsylvania and that he didn't tell his brother that he had them? That's correct, yes And the state, of course, acknowledged that Jeremiah was exercising exclusive possession over them Of course, he pleaded guilty to possessing these two firearms There's evidence that he was the one who stole them from a house next door to where Jeremiah lived And so there's tons of evidence corroborating his testimony that he exclusively possessed these guns And he did testify that Andrew did not know that the guns were in the car Andrew also testified that he did not know that the guns were in the car So essentially, we've got their uncontested testimony to that fact And we've got nothing else connecting Andrew to the guns No fingerprints, no physical evidence There was really nothing to show that he knew that the guns were inside the car As an alternative basis, I'd also argue that even if he... The state could somehow be inferred that he knew the guns were in the car That wouldn't matter because, again, these are guns that Jeremiah was exclusively possessing There's even a point where Jeremiah's father tried to take the guns from Jeremiah And Jeremiah angrily demanded them back from him So we have a situation here where, sort of like the McIntyre case Where you've got someone else in the car at the time who claimed responsibility for the guns And there just would need to be more evidence than just knowledge that the guns were in the car  It needs to be actually proven that someone intends to exercise control over the guns And typically one would not intend to exercise control over guns that someone else treated exclusively their own So for that reason, I would ask that this Court reverse outright Andrew's conviction of unlawful possession of a weapon by a felon Reverse his other convictions for all the reasons that I've argued in my brief In addition to the Rule 401A admonishments and remand his case for a new trial And in the alternative, if this Court has to reach a sentencing issue Then to reduce his sentence for the lower class, Class 4 felony of aggravated fleeing or attempting to elude a police officer To 3 years instead of 6 And that concludes what I have If Your Honors have any questions, I'll be happy to answer them at this time Thank you, Mr. Court Thank you, Your Honors Mr. Atwood May it please the Court, Your Honors, Counsel My name is Nicholas Atwood and I represent the people of the State of Illinois in this matter I think I'll just take it from the top as far as the issues go The first issue in this case was whether or not the people proved the defendant guilty of the unlawful possession of a weapon by a felon charge And the people don't concede that the defendant's brother exclusively possessed the firearm And even if they had, 2 individuals can exclusively possess the firearms under the case law in this State Notably, what we have here were 2 shotguns, not just 1 It sort of stands to reason that there'd be no reason for 1 individual to bring 2 shotguns just for himself When there are 2 individuals in the vehicle It makes more sense that these 2 each have a shotgun for whatever purpose they have them for And when we look at constructive possession, which was the theory that the defendant was convicted on We're looking first at knowledge and then whether he had the ability and the intent to control the area Not just control the firearm itself That's actual possession, not constructive possession We're looking at does this defendant control the area And so we're looking at his knowledge first What do we do to prove knowledge? You have to show that the defendant had the opportunity to be aware that this gun was there What was his visibility in the area where the gun was found? How long did he have to look at it? And were there any furtive movements that might have suggested that he knew the gun was there? We can see there are no furtive movements here Because during the illusion from the officers, the guns were thrown from the vehicles There was no way to know that the defendant may have thrown one of those vehicles out But it does establish that the gun... This isn't trying to get rid of them In some of the case law, doesn't that demonstrate a lack of wanting to have exclusive control over the weapon When you're trying to get rid of it? I don't know of any case law that says that I don't know that that's what the briefs discuss There might be case law out there that says that I think it mostly just exemplifies trying not to get caught with the weapon As opposed to all the conduct that occurred before the stop was made in this traffic case But we've got a Nissan Versa vehicle This is a compact car There's no trunk These are two full-sized shotguns They're at least two feet in length The defendant was in this vehicle with his brother for days on end Not just a matter of minutes Counsel cites the McIntyre case and wants this court to follow that But in McIntyre, we had a pistol We had about 20 minutes, I think the court said As far as the defendant's opportunity to be aware of the pistol The pistol was stored first in the crotch of the passenger's pants And then it was found later in between the passenger seat and the door in the plastic area Where the defendant had no access to it at that time That's clearly distinguishable from what we had in this case And what we talked about in the brief is that The evidence showed that these two brothers stopped at various hotels along the way It's obvious that they would have been taking items in and out of the vehicle Which was small to begin with To imagine that you could miss two shotguns in a compact vehicle The jury could easily infer that that wasn't accurate Because really all we had saying that was the testimony of the defendant and his brother Who were both convicted of felonies of dishonesty And so there was really no reason for the jury to give that testimony more weight Than the logical and reasonable inferences they could have made with regard to a common sense Look, could you really go days in this vehicle without noticing the presence of these weapons? And ownership of the vehicle, which the evidence established the defendant did own this vehicle Is prima facie evidence that he has the ability to exercise control over the firearm And I believe that's the Johnson case that says that The final factor with this, the opaque nature of the containers The case law says that the opaque nature of the containers alone Is not sufficient to say that he doesn't have knowledge that these shotguns were there Especially given the obvious inference that they were moving items in and out After all, they had to use this HP printer that was in the back of the vehicle To print the fake currency that they later tried to pass off at the various establishments that they did Clearly they couldn't have printed that from inside the vehicle They would have had to go in and have a power source in the hotel rooms And so it's obvious they would have been moving items in and out of the vehicle So I think that it was clear that the people proved that beyond a reasonable doubt Because the jury did not have to believe the testimony of the defendant and his brother With regard to the waiver of counsel issue With this issue, the defendant was not apprised of his sentence before he waived his counsel But we don't have to have strict compliance with this rule We only have to have substantial compliance And it's very clear from the record that the defendant knew he had a right to counsel And it's very clear from the record that he understood what the nature and elements of the charge were In fact, he was successful in getting a not guilty verdict on the strictest charge Because he faced the aggravated unlawful possession of a stolen weapon So it was clear that he had this knowledge of those issues With regard to the sentence, he didn't know the correct sentencing range before he waived counsel But he was informed of it a week beforehand, before the trial started That was after he waived And so the issue here is, he's also got to show that he was prejudiced by the court's failure Not just substantial compliance, but also that the court's failure to comply with the rule prejudiced him And he had the opportunity to ask for counsel before moving to trial, but he didn't do so So I think it's clear that the defendant's indicating by his own actions that he's not prejudiced by this I think it's also worth noting that throughout these proceedings The defendant was very preoccupied with the speedy trial right His sentence was not a motivating factor for him representing himself He had alleged problems with his communications with prior counsel And he had alleged the speedy trial issue throughout So the sentence is really just an afterthought that's being raised for the first time on appeal And I don't really think that it factored into his decision to proceed pro se And I think for all those reasons, we can look at the Maxie case Which talks about an improper sentencing range The defendant not being aware of the proper sentencing range when he waives And the Maxie court still found substantial compliance And one of the things that they relied upon in that case was the legal sophistication of the defendant In that case, he might have been a paralegal or something like that Now we don't have that level here What we do have is a defendant who was more successful than the defendant in Maxie Because he actually got off on the most difficult charge Whereas the defendant in Maxie actually failed in getting his evidence suppressed Moreover, the defendant has an extensive criminal record He's very well informed with what happens And based on the record and his comments throughout He was heavily involved in the defense of his case from start to finish And so I think it really shows that he understood what he was doing here He understood what the ramifications would be And yet he still proceeded anyway And I think under Maxie and under Wright This misinformation regarding the sentencing range is not dispositive Of whether or not he knowingly and voluntarily waived his counsel Which is the real issue here We're trying to find out if this was knowingly and voluntarily And I think given these facts, it was With regard to the closed courtroom and the public trial nature The defendant bears the burden of showing that this was more than just a trivial error If it was an error at all One of the things that was talked about was obviously this court's decision in Radford And the Weaver case from the Supreme Court And the Weaver case was a slightly different context They were doing that in an ineffective assistance of counsel claim But in this claim, we got a forfeited error because it wasn't properly preserved And so when we're doing a plain Doesn't evidence say that this is not You know, the integrity of voir dire is not for a trivial closure It sort of establishes that, you know, the voir dire is an important part It isn't trivial in nature And it's the entirety of voir dire that the courtroom is closed Yeah, voir dire itself is not trivial But if it was an error to close it, is that trivial? And I think the Weaver court talks about the adversarial portion of this trial Was always open to the public And with regard to the voir dire There were 29 members of the public Who were not ultimately selected as jurors who were present And importantly, when we're talking about showing triviality Like I said, in the context of a plain error It's very similar to an ineffective assistance of counsel Ineffective assistance of counsel, you've got to make that proof as a defendant In plain error, you've got to show Are you saying the people in the voir dire were the public? They were mentioned either in Radford That was a public trial They were a part of the public In Radford and in Weaver, in one of those cases, it is mentioned One of them would have been there had they not been noticed You know, I'm sure It's entirely possible that they wouldn't have been And I recognize, I believe you just censored in Radford Or one of the related cases And I recognize that these people didn't voluntarily show up But that doesn't change their status as members of the public They were still there And I think what's the most important factor of this Is not just that, you know, the defendant's friends or family are present There are members of the public And the reason we have this fundamental protection of a public trial Is to avoid, you know, problems with the courtroom procedure To remind the judge and the prosecutor of what their roles are To encourage people to come forward as witnesses To avoid perjury The defendant never alleged that any of those things occurred in this case And so And nor did the trial court make any findings of the necessity of closing this courtroom Didn't look at any alternatives Didn't do any of those things that, you know, have been required for quite some time You know, this isn't new These aren't new requirements Didn't make any findings Yeah, certainly that was an error on the court's part In that it should have made those findings But the problem is The court wasn't given an opportunity to make those findings By a contemporaneous objection In his brief, the defendant argues There was no contemporaneous objection to this procedure Because it would have fallen on deaf ears Because the court had made it a standard practice To exclude the public during voir dire And that's where, in our brief, we had mentioned There was no actual proof that any members of the public actually left It is possible that, though the court said You should leave Perhaps there was space and the mother stayed Or other members of the public were there But importantly Not giving the court that opportunity to object Prevented it from making these findings on the record Or perhaps accommodating the defendant in another way In addition to that The court had modified its trial practices before Because when the defendant objected during voir dire It removed jurors So the defendant could make his arguments And if I recall That happened also during the trial Which is not standard procedure for voir dire So it was clear that the court would have been willing To make those findings If it had been given the opportunity to do so However, absentmindedly The trial court did not initiate or offer those findings On its own accord on the record Well, when a trial judge is going to close a courtroom That trial judge certainly has the opportunity To explain why he or she is doing it, right? Correct Without an objection Because we know the importance of public trials And stuff, so Or even ask both sides Any objection to that Or something like that Certainly Especially in a criminal trial There's nothing prohibiting the trial court From making a record of something That any reasonable trial judge ought to know Certainly That would have been the best practice But, you know, the ultimate thing What it boils down to is Is it not Is it a trivial error or not? Was there some prejudice to the defendant By this practice? Because the Weaver court said Not every violation of a public trial Affects a fundamental right And in this case There's just There's not a shred of evidence to support That this is anything more than just a trivial error On the trial court's part The selection of the jury is Much greater than The trivial part of the trial And, you know, depending on What jurors you get It's the difference between guilt and innocence And how they view and weigh the testimony And the evidence that's presented And when you say To say that The other All the members of the veneer The veneer men are members of the public Well, they're subject to the proceedings So the public trial Applies to them too The ability to have You know, the public there to see all the proceedings Because then